**** NOT FOR PUBLICATION ****

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| HEARING COMPONENTS, INC., | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 9:07-CV-104 |
| | § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| SHURE, INC. | § | |
| | § | |
| *Defendant*. | § | |

**ORDER GRANTING PLAINTIFF'S MOTION TO PRECLUDE**

Plaintiff Hearing Components, Inc. filed suit against Defendant Shure, Inc. claiming infringement of United States Patent Nos. 4,880,076; 5,002,151; and 5,401,920. The '076 and '151 patents are directed toward a hearing aid ear piece or other sound transmission device connected to a disposable compressible foam sleeve. The '920 patent covers a fibrous guard that is placed over the opening of a sound transmitting tube inserted into a person's ear canal. HCI moves to preclude the testimony of Shure's invalidity expert Dr. John Casali regarding whether the asserted claims of the '076 and '151 patents are valid over the prior art, on the basis that Dr. Casali neither performed an in-depth analysis of these patents nor considered several pieces of prior art that Shure and its other invalidity expert believe to be key.

Because any limited probative value Dr. Casali's testimony would have for the purpose of demonstrating a reason to combine references based on the background knowledge possessed by a person of ordinary skill in the art would not assist the jury and is substantially outweighed by the danger of confusing the issues, or by considerations of waste of time and/or needless presentation of cumulative evidence, the court will grant HCI's motion.

**I. Applicable Law**

Fed. R. Evid. 702 provides that a witness who is "qualified by knowledge, skill, experience, training, or education," may provide opinion testimony if that testimony will assist the trier of fact and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The witness must possess "specialized knowledge, skill, experience, training, or education in the relevant field," in order to be qualified to express his expert opinion on the topic in issue." *Christopherson v. Allied-Signal Corp.*, 939 F.2d 1106, 1110 (5th Cir. 1991).

The Supreme Court in *Daubert* charged trial courts with the task of determining whether expert testimony under Rule 702 is "not only relevant, but reliable." *Daubert v. Merrill Dow Pharmas.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2794 (1993).

> The *Daubert* opinion lists a number of factors that a trial court may use in determining an expert's reliability. Trial courts are to consider the extent to which a given technique can be tested, whether the technique is subject to peer review and publication, and known potential rate of error, the existence and maintenance of standards governing operation of the technique, and, finally, whether the method has been generally accepted in the relevant scientific community . . .These factors are not mandatory or exclusive; the district court must decide whether the factors discussed in *Dauber*t are appropriate, use them as a starting point, and then ascertain if other factors should be considered....But the existence of sufficient facts and a reliable methodology is in all instances mandatory. Without more than credentials and a subjective opinion, an expert's testimony that "it is so" is not admissible.

*Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) (internal citations omitted).

A court is not required to "admit opinion evidence that is connected to existing data only by the ipse dixit of the expert," and may "rightfully exclude expert testimony where a court finds that an expert has extrapolated data, and there is 'too great an analytical gap between the data and

the opinion proffered.'" *Burleson v. Tex. Dep't. Crim. Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (quoting *Gen'l Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S. Ct. 512, 519 (1997)).

**II. Analysis**

HCI argues that Dr. Casali's testimony regarding the '076 and '151 patents should be excluded because: (1) he admits that he did not perform an in-depth analysis of these patents; (2) he admits that he did not consider several pieces of prior art that Shure and its other invalidity expert, Dr. Kristin Wood, believe to be key; and/or (3) any minimal probative value of Dr. Casali's testimony is substantially outweighed by the danger of unfair prejudice, confusion to the jury, and or needless presentation of cumulative evidence.

Dr. Casali testified during deposition that his primary task was to analyze validity and infringement for the '920 patent, and that he did not perform an in-depth analysis on the validity of the asserted claims in the '076 and '151 patents. Deposition of Dr. Casali, Pl. Mot. Preclude, Ex. A at p. 63, ll. 1-23; p. 65, ll. 17-20 [Doc. # 89]. Dr. Casali stated that he limited his analysis because Shure had another expert witness, Dr. Wood, who was "asked to deal with [the] '076 and '151 [patents] in an extensive manner." *Id.* at p. 63, ll. 20-23. He also testified that he did not formulate an opinion regarding obviousness with respect to United States Patent No. 4,677,679 (the Killion patent) and had "no opinion" on validity in light of this reference. *Id.* at p. 64, l. 24 - p. 65, l.4.

Shure argues that Dr. Casali's testimony is not being offered for an ultimate opinion on the validity of the '076 and '151 patents; rather, he will testify as to the state of the art at the time of the invention, how a person of ordinary skill in the art would understand certain prior art references, and whether there would be reason to combine elements of the prior art. *See, e.g.,*

*KSR Int'l Co. v. Teleflex, Inc*., 550 U.S. 398, 127 S. Ct. 1727, 1740-41 (2007) ("Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the marketplace; *and the background knowledge possessed by a person having ordinary skill in the art*, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.") (emphasis added).

Shure is correct that the background knowledge of the person of ordinary skill is something the trier of fact may look to when determining whether a patent is obvious in light of certain references. However, an obviousness analysis requires demonstration that particular references Shure asserts are prior art render certain claims the '076, '151, and/or '920 patents invalid. *Innogenetics, N.V. v. Abbott Labs*., 512 F.3d 1363, 1373 (Fed. Cir. 2008). "[K]nowledge of a problem and motivation to solve it are entirely different from motivation to combine *particular references* to reach the particular claimed method." *Id.* (emphasis added)[1].

Dr. Casali's report, with one exception, mentions in very general terms only that hearing aids and sound transmission devices have been in existence since at least the 1930s and that "there have been several examples of soft, pliable eartips or sleeves, mounted over ducts for sound passage therethrough, with provisions for connections to earpieces, that were patented and/or produced and sold for integration with" those hearing aids and sound transmission devices. Expert Report of Dr. Casali, Def. Resp., Ex. 1 at p. 10 [Doc. # 104]. Dr. Casali's report

---

[1]*Innogenetics* involved appeal of a district court decision made pre-*KSR*, a Supreme Court decision which makes clear that a finding of motivation to combine is not a "rigid rule that limits the obviousness inquiry." *KSR*, 127 S. Ct. 1727, 1741. However, in this case, Shure is offering Dr. Casali's testimony solely for the purpose of purportedly demonstrating background knowledge which can be used to determine whether a reason to combine references exists.

includes a timeline depiction with six such examples, small pictures of these ear piece/sleeve combinations, no text beyond three to seven word titles for these pictures, no analysis in the text of the report at all, and a passing reference to "source materials supporting each entry. . .included at Tab C to this report." *Id.* at p. 11. As neither Shure nor HCI included Tab C and the documents which follow it in their motion papers, the court is forced to rely only on the disclosures made in Dr. Casali's report in making its ruling.

Dr. Casali analyzes only one reference in the text, namely United States Patent No. 3,811,437 (the Gardner patent), and does so by way of an "example," which was chosen because of Dr. Casali's familiarity with the technology, the inventor, and the company to which the '437 patent is assigned. *Id.* He tells the story of the development of the technology, what the patent teaches, and opines on what the state of the art was when the patent application was filed in 1971. Finally, Dr. Casali states the following:

> To a person having ordinary skill in the art, it was already known or would have been obvious to incorporate a connection means with the "tube" of Gardner's '437 patent, to produce the inventions taught by the asserted '076 and '151 patents – those connections (e.g., screw threads and ball and socket) being well known within and outside the hearing aid arts. For instance to add the threaded connections described in the asserted '076 and '151 patents to Gardner's sound conducting tube would have been obvious at least from the 1979 Hal-Hen Expan-Earmold [mentioned on Dr. Casali's timeline] hearing aid earpiece that has a removable, threaded-duct sleeve. . . The body of prior art, along with logical thinking and knowledge of those skilled and working in this art, resulted in predictable combinations of foam sleeves, ducts, and various connection means to hearing aids like those of the asserted '076 and '151 patent claims. . .*Thus, the conclusion is that there existed clear and obvious prior art to the '076 and '151 patents*. . . .

*Id*. at pp. 12-13 (emphasis added).

In short, Shure is either: (1) attempting to offer Dr. Casali's report and testimony for the sole purpose of demonstrating the background knowledge of one of ordinary skill in the art prior

to the filing of the ‘076 patent in 1986 without actually discussing any specific reference other than the Gardiner ‘437 patent; or (2) disingenuously claiming this is the reason for the testimony while actually planning to evoke testimony on the ultimate validity of the ‘076 and/or ‘151 patents.

If it is the first alternative, Dr. Casali’s testimony is cumulative and of marginal probative value. Shure has another expert, Dr. Wood, who will be testifying as to the validity of the ‘076 and ‘151 patents and will doubtless say that prior to 1986, a person of ordinary skill in the art would have generally known about ear piece and sleeve combinations. *KSR* states that the background knowledge possessed by a person having ordinary skill in the art can be relevant to the determination of whether there was a reason to combine certain elements found in the prior art. Provision of such testimony divorced entirely from any analysis of the elements found in the prior art is of little, if any, probative value and would not assist the jury. As a practical matter, it would be difficult, if not impossible, for the court to limit Dr. Casali to the general discussion of the prior art found in his expert report while also preventing him from discussing how to combine certain elements of these references to render the asserted claims invalid.

If, on the other hand, Shure is offering Dr. Casali’s testimony in hopes of getting in through the back door what, for whatever reason, it chose not to get in through the front, such testimony would be inconsistent with what Shure has represented to this court in its motion papers and goes beyond the scope of Dr. Casali’s expert report. The expert report itself seems to belie Shure’s assertion that it will limit Dr. Casali’s testimony to background knowledge of the person of ordinary skill in the art, as it concludes “there existed clear and obvious prior art to the ‘076 and ‘151 patents.” *Id.* at p. 13.

IT IS THEREFORE ORDERED that Plaintiff Hearing Components's Motion to Preclude [Doc. # 89] is GRANTED. Dr. John Casali's testimony on the validity of United States Patents Nos. 4,880,076 and 5,002,151 will be precluded.

So **ORDERED** and **SIGNED** this **1** day of **December, 2008.**

Ron Clark, United States District Judge