IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| HEARING COMPONENTS, INC., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 9:07-CV-104 |
| | § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| SHURE, INC. | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING DEFENDANT'S MOTION FOR JMOL ON INVALIDITY**

Plaintiff Hearing Components, Inc. filed suit against Defendant Shure, Inc. claiming infringement of United States Patent Nos. 4,880,076; 5,002,151; and 5,401,920. The '076 and '151 patents are directed toward a hearing aid ear piece or other sound transmission device connected to a disposable compressible foam sleeve. The jury returned a verdict:

(1) finding infringement of claims 17 and 36 of the '076 patent and claims 1 and 13 of the '151 patent for Shure's products both with a barb (i.e., SCL3; SCL4; SE210; and SE11) and with a straight nozzle (i.e., i2c; i3c; i4c; and SCL5);

(2) finding no invalidity on obviousness grounds; and

(3) awarding damages in the total amount of $ 4,622,999.00. *See* Doc. # 158.

Now before the court is Shure's motion for judgment as a matter of law ("JMOL") on invalidity [Doc. # 150].

The court has limited its review to evidence that was admitted and discussed before the jury, and to the specific combinations of references that were submitted to the jury for its determination of obviousness. The court also must recognize that the jury had to assess the evidence presented by HCI's expert Dr. Marshall Chasin, who had almost thirty years of

1

experience in the field of audiology and had worked with much of the prior art, and compare that evidence with the testimony of Shure's expert Dr. Kristin Wood, who had absolutely no experience designing hearing aids or ear plugs until more than five years after the '076 patent application was filed in 1986. Tr. at p. 1074, l. 17 - p. 1075, l. 17.

The court concludes that a reasonable jury could have found that Shure did not meet its burden to prove by clear and convincing evidence that one of the three prior art combinations alleged by Shure rendered any of the asserted claims of the patents-in-suit obvious. Shure's motion for JMOL on invalidity is denied.

## Legal Principles

**1.   Standard of review is Fifth Circuit's "substantial evidence" rule**

JMOL is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Rule 50(a)(1); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 2109 (2000). The Federal Circuit reviews an appeal from a grant or denial of a motion for JMOL under the law of the regional circuit in which the appeal from the district court would usually lie. *ACCO Brands, Inc. v. ABA Locks Mfr. Co. Ltd.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007). A finding in a patent case by a jury in a federal district court in the Fifth Circuit is therefore reviewed under the "substantial evidence" rule. *Id.*

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1363 (Fed. Cir. 2004) (internal quotation omitted). A court must be careful to determine which party had the burden of proof, and what that burden is. If a party has

the burden of proof and the jury fails to find in its favor, it is not precisely correct to say that there must be substantial evidence supporting the non-movant. If there is no evidence on an issue, the party with the burden of proof should lose. Even where the movant presented an interested witness on an issue, and the non-movant presented no witnesses, the jury might simply have decided that the movant's witness was not credible and/or impeached on cross-examination. Where the party with the burden of proof by clear and convincing evidence fails to obtain a favorable finding, more will be needed to overturn the verdict. *Eli Lilly*, 376 F.3d at 1363.

There is no legally sufficient evidentiary basis for a verdict where "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at contrary verdict." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (internal quotation omitted). A jury's verdict is given great weight and all reasonable inferences are drawn in the light most favorable to the verdict. *Thomas v. Texas Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000); *see also Krystek v. Univ. of S. Mississippi*, 164 F.3d 251, 258 (5th Cir. 1999) ("We accord great deference to a jury's finding of facts.").

**2.      Scope of review includes all evidence viewed in light most favorable to HCI**

In entertaining a motion for judgment as a matter of law, the court must review all of the evidence in the record. *Reeves,* 530 U.S. at 150, 120 S.Ct. at 2110. In doing so, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* Thus, although the court should review the record as a whole, it must disregard all

3

evidence favorable to the moving party that the jury is not required to believe. *Id.* That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Id.*

### 3. Shure must prove invalidity by "clear and convincing" evidence

Shure bears the burden to prove invalidity by clear and convincing evidence, and the burden of proof will never shift to HCI, the patentee, to prove validity. *Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1380 (Fed. Cir. 2008). Clear and convincing evidence has been described as "evidence that places in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 n.5 (Fed. Cir. 2007) (citing *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433 (1984)). While it is true that once Shure has presented a prima facie case of invalidity, HCI bears the burden of going forward with rebuttal evidence,

> all that means is that even though a patentee never must submit evidence to support a conclusion by a judge or jury that a patent remains valid, once a challenger introduces evidence that might lead to a conclusion of invalidity – what we call a prima facie case – the patentee would be well advised to introduce evidence sufficient to rebut that of the challenger.

*Pfizer*, 480 F.3d at 1360 (internal quotation omitted). This requirement does not shift the burden of persuasion to HCI, because the presumption of patent invalidity "remains intact and the ultimate burden of proving invalidity remains with the challenger throughout the litigation." *Id*. On a motion for JMOL, the court must therefore consider "the totality of the evidence, including any rebuttal evidence presented by the patentee." *Id.*

4

**Analysis**

**1.      Shure invalidity defense was based on obviousness**

Shure argues that no reasonable jury could have failed to find that the asserted claims were obvious based on one or more of three combinations of prior art: (1) United States Patent No. 2,325,590 to Carlisle and United States Patent Reissue No. 29,487 to Gardner; (2) '590 patent to Carlisle and United States Patent No. 4,677,679 to Killion; and (3) '679 patent to Killion and United States Patent No. 4,122,841 to Rock.[1]  These were the three combinations of prior art submitted to the jury.  Doc. # 158 at pp. 3-4.  The jury was presented with no other grounds for finding any claim invalid.   Shure did not include in its asserted combinations several references which were discussed at trial and admitted as exhibits, namely United States Patent No. 4,375,016 to Harada (DX 28) and United States Patent No. 3,169,600 to Thomas (DX 33).

Under 35 U.S.C. § 103(a), a claimed invention is unpatentable if the differences between the invention and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  *See also Graham v. John Deere Co.*, 383 U.S. 1, 14, 86 S. Ct. 684, 692 (1966).  The determination of whether an invention is obvious is a legal conclusion that is based on factual inquiries, including (1) the content and scope of the prior art; (2) the level of ordinary skill in the prior art; (3) the differences between the prior art and the claimed invention; and (4) any objective evidence of

---

[1]Shure also raises the argument in a footnote that if the UAP structure of the straight nozzle is equivalent to any of the claimed "fastening" or "attaching" means, the asserted claims are anticipated by Killion.  Shure did not raise this argument at trial, and no anticipation question was submitted to the jury.  Regardless, the court need not consider this argument as it has already found the uniform annular projection (UAP) structure of the straight nozzle not to be a structural equivalent in its Order Granting in Part Shure's motion for JMOL on non-infringement.

non-obviousness. *Graham*, 383 U.S. at 17-18, 86 S. Ct. at 694. One component of the obviousness showing is a teaching, suggestion, or motivation to combine the references. *See KSR Int'l. Co. v. Teleflex, Inc.*, 550 U.S.398, 127 S. Ct. 1727, 1740-41 (2007). The jury was fully instructed on these concepts and asked to determine whether Shure had shown by clear and convincing evidence that any of the claims were obvious in light of any of the asserted invalidity combinations.

## 2. The court only considers evidence actually presented to the jury

This case requires a careful examination of what evidence should be considered when determining whether a party has met the "clear and convincing" standard in a jury trial. Does this mean "clear and convincing evidence"as actually presented to the jury? Or is it sufficient to make passing references to veritable tomes of technical data, and then criticize the jurors for being too uneducated to comprehend sophisticated concepts which were so easily "understood" by the lawyers and experts who have been studying the case for months, if not years?

This court informed counsel that if evidence from lengthy documents, other than the patents-in-suit, was presented at trial, only the cover page, index, and the pages actually discussed before, or explained to, the jury would be admitted.[2] Tr. of Final Pre-Trial Hearing, at p. 37, l. 19 - p. 38, l. 2. It is disingenuous for counsel to present, through a witness at trial, text and a diagram from pages 82-84 of a 300-page technical manual; ask to have the entire manual

---

[2]Recognizing the complexity of patent cases, although this case was by no means among the more complex, the court provided each juror with a notebook containing a glossary of common patent terms; copies of the patents-in-suit; the claims at issue in 14-point font and the construed terms in bold; and the court's construction of disputed claim terms. Counsel were asked for suggestions about material to be added that might help the jury. Each side submitted for inclusion pages with the photographs of their witnesses and space for notes – to help the jurors remember the testimony of each witness – and samples of the products in dispute.

admitted; and then claim a clear and convincing burden was met if the court would only consider pages 201 and 245-48. District judges have long been counseled to avoid such absurdities, especially in complicated cases:

> Counsel should present exhibits in a manner that will communicate some significant fact. . . Thus, documentary proof should be redacted to eliminate irrelevant matter, and its contents offered, whenever possible, by way of summary or other streamlined procedure that will focus the jury's attention on the material portions.

Manual for Complex Litigation Fourth 141 (Fed. Jud. Ctr. 2004).[3]

For the same reason, the court informed Shure that, without limiting the combinations of allegedly invalidating references it could present, it would have to identify each specific combination of prior art items that it asserted made one or more of the asserted claims obvious. To permit a party to list, for example, nine prior art references, and allow an expert to tell the jury

---

[3] *See also* Howard T. Markey, *On Simplifying Patent Trials*, 116 F.R.D. 369, 369 (1987) ("[T]he simplifying of patent trials is a duty of bench and bar that is today too often unmet."); Remarks of Federal Circuit Judge Haldane Robert Mayer at the 11th Annual Judicial Conference of the United States Court of Appeals for the Federal Circuit, 153 F.R.D. 177, 251 (1994) ("[I]f juries find issues and facts too complex, it is because the lawyers have failed to present their cases clearly or judges have failed to structure the proceedings in a way that would simplify matters for the jury to understand them."); *Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1131-32 (Fed. Cir. 1985) (Markey, C.J., concurring):

> Reassurance resides also in the role of judge and counsel in managing, simplifying, and assuring presentation of complex evidence with clarity to the fact-finder. That effective trial management is the route to fair resolution of "complex" matters in jury trials is a truism unchallenged by extant empirical evidence.
>
> As they have in varying degrees for almost 200 years, trial judges daily require. . . pretrial procedures in an effort to identify and focus the issues. They discourage unnecessary pleadings and encourage stipulation of undisputed matters. They precharge the jury and explain legal and technical terms to be used. They shield the jury from irrelevant, non-probative evidence and from unnecessarily lengthy or complicated "foundation" laying. They encourage use of charts, graphs, and other visual devices to focus and clarify the evidence. Following summations, trial judges greatly facilitate the jury's function when they give clear-cut, comprehensible jury instructions in plain and simple English.

that some combination of two or more of them is what makes a claim invalid is gamesmanship of the highest order. On appeal, after seeing what did not work well, the party would have, mathematically, some 502 potential combinations of two or more references from which to choose. Some of them may actually invalidate a claim, but is it clear and convincing evidence to the jury if that combination was not explained to them?

The question of what should be considered as part of clear and convincing evidence is important because two references – the Harada and Thomas patents – were mentioned by Shure but ultimately not submitted as obviousness references to the jury. The court will admit to some puzzlement as to why Shure chose not to submit these references, most notably Harada, to the jury. However, because they were not, it would not be appropriate to consider them now. This is especially true since Shure does not argue that the patents are invalid in light of Harada or Thomas in this motion.

### 3. There was conflicting, credible evidence on invalidity presented at trial

Shure's invalidity expert, Dr. Wood, testified that Carlisle (DX 254) taught all elements of the asserted claims except the use of slow-recovery foam – i.e., a replaceable sleeve connected to a hearing aid ear piece where the sleeve and ear piece are connected using a ball-and-socket structure. Tr. at p. 1046, l. 10 - p. 1048, l. 17; *see also* DX 254, at col. 2, ll. 49-55 (ball-and-socket connection). According to Dr. Wood, the Gardner patent (DX 29) taught the slow-recovery foam element missing from Carlisle. Tr. at p. 1048, l. 23 - p. 1049, l. 22; DX 29, at col. 5, ll. 43-56 ("Again, it is found that the foamed polymeric structures are compressible to below the dimensions of the ear canal and can be comfortably inserted therein with subsequent slow recovery thereof to substantially fill the cross-section of the ear canal."); Fig. 2. Shure also

points to testimony from Dr. Oliveira, one of the inventors of the patents-in-suit, that slow-recovery foam was well known in the art[4], as were barbs[5].

HCI's invalidity expert, Dr. Chasin, testified in rebuttal to Dr. Wood's testimony. He stated that the Carlisle patent lacked the "soft, flexible duct" claim element[6]; rather, Carlisle's duct was molded. Tr. at p. 1362, ll. 14-18. According to Dr. Chasin, Carlisle's device was not inserted into the ear canal[7], but instead just "goes into the outside or the proximal end of the eartip." Tr. at p. 1362, l. 20 - p. 1363, l. 25; *see also* DX 254, col. 2, ll. 40-48 (the earphone is associated with a receiver cap, connected to a small ear tip duct "fitting and engaging the entrance portion of the ear canal").

Dr. Wood testified that Killion (DX 23) taught all elements of the asserted claims except for the use of mating male and female connecting features (which he asserted was taught by Carlisle's male ball and female socket connection), including a foam sleeve; duct; ear piece; interference fit connection. Tr. at p. 1049, l. 23 - p. 1052, l. 1; *see also* DX 23, at Fig. 2A; col. 4, ll. 41-44 ("slow-recovery foam plugs attached to the PVC tubing [which makes up the sound

---

[4]Tr. at p. 199, l. 16 - p. 200, l. 3; p. 201, l. 14 - p. 202; l. 4; p. 203, l. 9 - p. 205, l. 10.

[5]Tr. at p. 264, l. 11 - p. 269, l. 4.

[6]Both of the asserted claims in the '076 patent require that the duct be "flexible." '076 patent, col. 8, l. 61 (claim 17); col. 10, l. 65 (claim 36). Neither of the asserted claims in the '151 patent has the same requirement.

[7]Three of the four asserted claims specifically require that the sleeve be inserted into an external ear canal of the user. '076 patent, col. 8, ll. 59-60 (claim 17); col. 10, ll. 60-61 (claim 46); '151 patent, col. 15, ll. 20-21 (claim 13). Only claim 1 of the '151 patent lacks this element. However, claim 1 does require an "ear piece component," which the court construed to mean "[a] constituent part of the portion that is *inserted into the external ear canal*, a part of which may extend outwardly into the bowl of the ear." (emphasis added).

9

tube]"); l. 53 (foam plug is "disposable"). Dr. Wood also testified that Rock (DX 32) teaches the use of a barb. Tr. at p. 1054, l. 8 - p. 1056, l. 25. He used demonstrative slides to show how, in his opinion, each element of the asserted claims was present in one of the four pieces of prior art. Although these slides were not themselves offered as exhibits, his discussion of them is in the record. Tr. at p. 1056, l. 25 - p. 1058, l.13.

Regarding the Killion patent, Dr. Chasin described the claimed device as something used to test hearing, rather than to improve the quality of sound. Tr. at p. 1355, l. 18 - p. 1362, l. 1. He also disagreed with Dr. Wood's conclusions that Killion taught an ear piece or a disposable sleeve. Tr. at p. 1355, l. 23 - p. 1366, l. 9; p. 1360, ll. 9-22.

Dr. Wood testified that it would have been obvious to one of ordinary skill in the art to combine these references. With respect to Carlisle and Gardner, he suggested that a person concerned with universal fit, the comfort of the fit, and sound quality – all of which are major concerns or common problems in the field – would have looked at these references and seen a predictable, common sense way to solve these problems. Tr. at p. 1144, l. 5 - p. 1146, l. 3; *see also* Tr. at p. 1059, ll. 6-16 (Carlisle and Gardner); p. 1059, l. 20 - p. 1060, l. 6 (Carlisle and Killion); p. 1060, ll. 7-10 (Killion and Rock). Of course, it is always easy to say a combination of elements is predictable after someone else has done it. Finally, Dr. Wood testified regarding secondary considerations, including whether others accepted licenses because of the merits of the invention; the value of the product; and whether there was evidence of copying. Tr. at p. 1060, l. 22 - p. 1066, l. 2.

Viewed as a whole, Dr. Wood's testimony in both these areas – motivation to combine and secondary considerations – is rather sparse, and lacking in specific details. Very little of his

testimony regarding motivation to combine and secondary considerations was brought out on direct testimony; rather, he was cross-examined fairly effectively on his failure to provide specific findings on these points by HCI's counsel.

On the other hand, Dr. Chasin testified that a person of ordinary skill in the art would have no reason to combine any of the references, stating that Carlisle, in particular, taught nothing about the patents-in-suit, Tr. at p. 1365, ll. 5-18, and that analysis of secondary considerations like commercial success weigh against a finding of invalidity. Tr. at p. 1365, l. 19 - p. 1366, l. 14. He suggested that Dr. Wood was unable to identify any clear problem that existed in the art at the time the first patent application was filed in 1986, and that the practice in the art at that time was to create custom earmolds for customers who required higher quality sound. There was no reason to create a disposable compressible foam sleeve, at least in part because "people in the mid 1980s were not really listening a lot in the ear. . . there really wasn't a need, a perceived need, back then." Tr. at p. 1354, l. 25 - p. 1355, l. 17.

**4.      Review of evidence under *Reeves v. Sanderson Plumbing* supports verdict**

Shure had the burden to demonstrate invalidity by clear and convincing evidence. HCI did not have to prove the claims were valid. Congress has determined that validity must be presumed as a matter of law, *see* 35 U.S.C. § 282, so Shure cannot save itself by pointing to a lack of evidence from HCI. *Eli Lilly*, 376 F.3d at 1363 requires the court to consider this heavy burden of proof in determining whether "the facts and inferences point so strongly and overwhelmingly" in favor of Shure that no reasonable jury could have reached the verdict it did. *Wallace*, 271 F.3d at 219. Additionally the court must give credence to evidence favorable to HCI, and disregard evidence favorable to Shure that was contradicted by another witness or

impeached on cross-examination. *Reeves,* 530 U.S. at 150, 120 S.Ct. at 2110. Based on the conflicting evidence in the record, a reasonable jury could have concluded that Shure failed to carry its heavy burden.

It is for the jury, not the court, to evaluate the witnesses and weigh their testimony. *Id.* While Dr. Wood had been to the Kent State hearing aid museum in Ohio to look at prior hearing aid devices, Dr. Chasin had donated the device covered in the Carlisle reference to that very museum. Tr. at p. 1363, ll. 12-16. Dr. Chasin also knew Killion, an inventor on one of the allegedly invalidating prior patents, "very well." Tr. at p. 1356, ll. 13-18. Based on this knowledge, Dr. Chasin was able to testify as to what problems Killion had been concerned with solving in his device. Tr. at p. 1355, l. 25 - p. 1356, l. 4; p. 1361, ll. 9-19.

Dr. Chasin testified that neither Carlisle nor Killion taught an ear piece, as that term has been construed by the court; a flexible duct; or a user-disposable sleeve. Further, the Killion patent claimed a device used to test hearing, not improve sound quality, and required a foot-long sound tube. The jury was entitled to put more credence on the testimony of Dr. Chasin, who had used the Killion device and was well-acquainted with the inventor, than the statements of Dr. Wood, who had only seen one at the Kent State museum.

Dr. Wood provided very little in the way of analysis regarding either motivation to combine these references or secondary considerations. Although Shure is not required to show a motivation to combine, it remains one component of the obviousness analysis. *KSR*, 127 S. Ct. at 1740-41. Dr. Chasin pointed out a secondary consideration that Dr. Wood did not discuss, namely commercial success of the product. Dr. Olivera also testified about another secondary consideration, unexpected results. He stated that during the inventive process, everyone he

12

shared the prototype with opined that it would not work, thus indicating a "teaching away" from the intention. Tr. at p. 144, ll. 1-25. On this record, the court will deny Shure's motion for JMOL on invalidity.

IT IS THEREFORE ORDERED that Shure's Motion for Judgment as a Matter of Law on Invalidity [Doc. # 150] is DENIED.

So **ORDERED** and **SIGNED** this **6** day of **March, 2009.**

_____
Ron Clark, United States District Judge